# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GARY HARRIS,                )
                                  )
        Plaintiff,       )
                                  )     **Civil Action No. 3:19-cv-00540**
     v.                    )     **Judge Crenshaw / Frensley**
                                  )
ANDREW M. SAUL,         )
COMMISSIONER OF SOCIAL SECURITY   )
ADMINISTRATION,        )
                                  )
        Defendant.     )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's "Brief in Support of Motion for Judgement on the Administrative Record."[1] Docket No. 22. Plaintiff has filed an accompanying Memorandum. Docket No. 22-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 26.

For the reasons stated below, the undersigned recommends that Plaintiff's "Brief in Support of Motion for Judgement on the Administrative Record" be DENIED, and that the decision of the Commissioner be AFFIRMED.

---

[1] Plaintiff's Motion and Supporting Memorandum are both titled "Brief in Support of Motion for Judgement on the Administrative Record." *See* Docket Nos. 22, 22-1.

1

# I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on November 14, 2016, alleging that he had been disabled since November 1, 2016, due to "legs" and "lower back." *See, e.g.,* Docket No. 15 ("TR"), pp. 295, 337. Plaintiff's application was denied both initially (TR 192), upon reconsideration (TR 204), and upon revised reconsideration (TR 206). Plaintiff subsequently requested (TR 222) and received (TR 122-157) a hearing. Plaintiff's hearing was conducted on September 27, 2018, by Administrative Law Judge ("ALJ") Elizabeth P. Neuhoff. TR 122. Plaintiff and vocational expert ("VE"), Dana M. Stoller, appeared and testified. *Id*.

On October 29, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 163. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since November 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairment: back disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. The claimant can sit, stand and walk 6 hours total each. The claimant can occasionally climb ladders, ropes or scaffolds and he can frequently perform all other postural activities.

2

6.	The claimant is capable of performing past relevant work as a crane operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.	The claimant has not been under a disability, as defined by the Social Security Act, from November 1, 2016, through the date of this decision. (20 CFR 404.1520(f)).

TR 168-173.

On November 6, 2018, Plaintiff timely filed a request for review of the hearing decision. TR 293. On May 9, 2019, the Appeals Council issued a letter declining to review the case (TR 1), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211,

3

213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of

4

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that: (1) there is new and material evidence submitted after the Appeals Council's decision which supports a finding of disability; (2) the ALJ erred in failing to admit evidence submitted more than five days prior to the hearing;  (3) the ALJ erred in failing to include varicose veins, status post-surgery three times, as a severe medically determinable impairment; (4)

6

the ALJ erred by giving improper weight to the opinion of reviewing doctors Thomas Thrush and Ok Yung Chung and in failing to give proper and supported weight to the treating source statement from Dr. John Gibson; (5) the ALJ erred by relying too heavily on the function report; and (6) the ALJ erred in assigning an RFC of medium, as this is inconsistent with the Medical Evidence of Record ("MER"). Docket No. 22-1, p. 1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*. at 14-15.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. New and Material Evidence**

Plaintiff argues that the consultative exam report submitted after the Appeals Council's denial constitutes new and material evidence. Docket No. 22-1, p. 13. Plaintiff contends that

7

remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted for consideration of the new evidence submitted with Plaintiff's "Brief in Support of Motion for Judgement on the Administrative Record." *Id.*

Defendant responds that the consulting doctor relied on medical records dated after the ALJ's decision and that Plaintiff has presented no argument as to how an examination that occurred a year after the relevant time period would change the ALJ's decision. Docket No. 26, pp. 10-11. Defendant maintains, therefore, that the consultative exam report is not material to the ALJ's decision and thus does not support a remand. *Id.*

The consultative exam report submitted by Plaintiff was written by Dr. Stephen K. Goewey after he performed a consultative exam on Plaintiff at Murfreesboro Services, LLC on October 8, 2019. Docket No. 22-2. This exam took place approximately a year following the ALJ's decision, which was issued on October 29, 2018. TR 163. Dr. Goewey's exam also took place approximately five months after the Appeals Council denial, which was issued on May 9, 2019. TR 1. The consultative exam is not part of the administrative record but was attached to Plaintiff's "Brief in Support of Motion for Judgement on the Administrative Record." Docket No. 22.

Remand for consideration of new and material evidence is appropriate only when the claimant shows that: (1) new, material evidence is available; *and* (2) there is good cause for the failure to incorporate such evidence into the prior proceeding. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). As discussed below, Plaintiff has not demonstrated that either factor exists here. Further, the Appeals Council will only consider additional evidence that is new, material, and relates to the period on or before the date of the hearing decision. 20 CFR 404.970. The consultative exam was performed a year after the ALJ's decision, and Plaintiff has not shown that this evidence relates to the period on or before the date of the hearing decision.

8

Plaintiff has not established that the consultative exam report is material. "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988), *citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980). Plaintiff has failed to satisfy this burden. "We have repeatedly refused to consider evidence submitted after the ALJ issued [her] decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g)." *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014), *citing Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996).

Moreover, Plaintiff has not established good cause for failing to submit evidence of the consultative exam report to the ALJ during the hearing. Plaintiff asserts that, upon examination, he was given an RFC of less than sedentary, but makes no argument as to why such a finding should be applied to his disability status prior to the ALJ's decision. *See* Docket No. 22-1, p. 13. Plaintiff also does not provide an explanation as to why this examination did not occur prior to the hearing. *See id.*

Plaintiff has failed to demonstrate either that his new medical evidence was material or that there was good cause for his failure to present the new evidence at the administrative hearing. Accordingly, remand pursuant to sentence six of 42 U.S.C. § 405(g) is not warranted.

Plaintiff also suggests that, because Plaintiff's subsequent claim for disability was granted by SSA, the October 2018 opinion of the ALJ regarding Plaintiff's DIB claim should be reconsidered. Docket No. 22-1, p. 2. A subsequent decision by the Secretary finding that Plaintiff was disabled after the Appeals Council denied review is not new and material evidence justifying remand of the

9

Secretary's determination that Plaintiff was not disabled for Title II purposes on or before October 29, 2018, the date of the ALJ's unfavorable decision. *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204 (6th Cir. 1990).

## 2. Failure to Admit Evidence Submitted Prior to Hearing

Plaintiff argues that the ALJ erred in failing to admit evidence submitted more than five days prior to the hearing. Docket No. 22-1, p. 5. Plaintiff maintains that the medical records were "submitted via upload to Franklin OHO" on September 20, 2018 for the hearing on September 27, 2018. *Id*. Therefore, Plaintiff asserts, these records were clearly admissible pursuant to 20 CFR 404.935 and failure to admit and consider the records constitutes a material error of law. *Id*.

Defendant admits that the medical records were submitted within five days of the hearing. Docket 26, p. 14. Nevertheless, Defendant argues that the Appeals Council considered the omitted evidence and found that it would not have changed the ALJ's decision. *Id*. Defendant maintains that the omitted medical record was a second opinion that confirmed the earlier report by Dr. Keyser, which was considered by the ALJ. *Id*. Defendant asserts that, in the opinion that was not considered, Patrick Ryan, M.D. suggested that Plaintiff proceed with a procedure to treat his varicose veins. *Id*. Defendant argues that Dr. Keyser had made the same suggestion and also submitted the procedure for insurance approval. *Id*. Defendant asserts that Plaintiff told the ALJ that he was awaiting insurance approval for the procedure and that Dr. Gibson noted that the suggested procedure was pending insurance approval. *Id*. Because all of this information was available to the ALJ, Defendant maintains that Dr. Ryan's treatment note is a second opinion which agreed with the first opinion, and thus remand to include this cumulative evidence into the administrative record would not change the outcome. *Id*.

When submitting a request for a hearing before an ALJ, a complainant should also submit

10

information or evidence as required by § 404.1512. 20 CFR 404.935(a). "Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing." *Id*. A "business day" is defined as "Monday through Friday, except for Federal and State holidays." 34 CFR 300.11(b).

Plaintiff's hearing was on Thursday, September 27, 2018. TR 122. The fifth business day before September 27, 2018, was September 20, 2018. Plaintiff submitted the evidence on Thursday, September 20, 2018 and was thus in compliance with the rule. The ALJ erred when she did not admit the medical records.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in a reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 546-47 (6th Cir. 2004). Thus, an ALJ's procedural error is harmless if her ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 CFR 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. *See id*; *see also Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 409 (6th Cir. 2009) (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

While Plaintiff argues that the ALJ erred in failing to admit the evidence, Plaintiff has not

11

demonstrated that he was prejudiced on the merits or deprived of any substantial rights because of the ALJ's procedural error. *See* Docket 22-1, p. 5. As further discussed below, the ALJ's ultimate decision was supported by substantial evidence. *See* TR 170-73. Further, the Appeals Council considered the omitted evidence and found that it would not have changed the ALJ's decision. TR 2. The omitted evidence does not introduce any new information, but instead confirms what the ALJ already believed to be true (that Plaintiff's varicose veins were severe enough to warrant treatment via laser ablation, which both Plaintiff and Dr. Keyser noted had been submitted for approval by insurance). *See* TR 143, 252, 406, 432-38, 502, 521. Thus, there is no reason to believe that the omitted evidence would have changed the ALJ's decision. *See id.* Although the ALJ erred in failing to admit the evidence submitted in compliance with the five-day rule, that error was ultimately harmless and thus does not warrant a reversal or remand.

### 3. Severe Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as a de minimis hurdle in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure

12

to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ in the case at bar found that Plaintiff had the following severe impairments: back disorder. TR 169. After explicitly finding at step two that Plaintiff had an impairment or combination of impairments that was severe, the ALJ continued her evaluation of the evidence and completed the sequential evaluation process. *See* TR 169-74. Because the ALJ specifically found that Plaintiff had at least one severe impairment and completed the sequential evaluation process, the ALJ's failure to find Plaintiff's varicose veins to also be severe simply cannot constitute reversible error. *See Maziarz*, 837 F.2d at 244. Accordingly, Plaintiff's argument on this point fails.

## 4. Weight Given to the Medical Opinions

Plaintiff maintains that the ALJ erred by giving improper weight to the opinions of reviewing doctors Thomas Thrush and Ok Yung Chung and in failing to give proper and supported weight to the treating source statement from Dr. John Gibson. Docket No. 22-1, pp. 7-13. Plaintiff contends that Dr. Gibson has been treating Plaintiff for approximately fifteen years or more and has either treated or been aware through other treatment records of Plaintiff's medical conditions. *Id.* Further, Plaintiff contends that Dr. Gibson's opinion is substantially supported by the MER and should be given great weight pursuant to 20 CFR 416.927. *Id.* Plaintiff maintains that the ALJ failed to follow this rule and that this failure constitutes a material and gross error of law. *Id.*

Defendant responds that the ALJ properly weighed the medical opinions in the record. Docket No. 26, p. 7. Defendant maintains that the ALJ appropriately gave significant weight to the opinions of Dr. Wilson and the state agency medical consultants, and little weight to Dr. Gibson's opinion. *Id.* Defendant further maintains that the ALJ determined that Dr. Wilson's opinion (that Plaintiff could lift 50 pounds occasionally, sit for four to six hours, and stand and walk for two to

13

four hours each day) was consistent with the treatment notes and thus the ALJ properly gave the opinion significant weight. *Id* at 7-8. Defendant contends that the ALJ gave significant weight to Dr. Thrush's opinion and great weight to Dr. Chung's opinion because they were consistent with Dr. Wilson's opinion, Plaintiff's treatment, and Plaintiff's daily activities. *Id* at 8-9. Defendant argues that, consistent with the opinions of Dr. Thrush and Dr. Chung, the ALJ found that Plaintiff could perform medium work with frequent postural activities except for occasional climbing of ladders, ropes, and scaffolds. *Id*. Moreover, Defendant maintains that the ALJ properly gave little weight to Dr. Gibson's opinion because, while Plaintiff states that Dr. Gibson treated him for fifteen years, the medical evidence indicates that Dr. Gibson treated Plaintiff for the first time since 2013 in January of 2017. *Id* at 9-10. Defendant further maintains that Dr. Gibson only saw Plaintiff three times in five years (January 2017, May 2017, and May 2018). *Id*. Defendant argues that the ALJ found Dr. Gibson's opinion inconsistent with the treatment notes and that Dr. Gibson's treatment recommendations contradicted his own opinion. *Id*. Finally, Defendant contends that, because it is the function of the ALJ to resolve conflicts between medical opinions and that ALJ found Dr. Gibson's opinion inconsistent with the opinions of Dr. Wilson and the state agency medical consultants, the ALJ did not err in the weight she assigned to the opinions of Dr. Gibson, Dr. Wilson, Dr. Thrush, and Dr. Chung. *Id* at 7.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at

14

https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html.  Plaintiff filed her

application prior to March 27, 2017.  TR 295.  As such, Plaintiff's case is governed by the rules that

were in effect at the time of the ALJ's decision.  *See* 20 C.F.R. § 404.614 (generally, an application

for benefits is deemed filed on the day it is received by an SSA employee).  The regulations that

were in effect at that time stated as follows:

> Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .
>
> (4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

Under these former regulations, the ALJ was required to articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 CFR 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

In accordance with the regulations as they read at the time, the Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Under this framework, if the ALJ rejects the opinion of a treating source, however, she is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

16

The ALJ in the instant action discussed the medical opinion evidence as follows:

On May 18, 2018, treating physician John Gibson, M.D., opined the claimant could occasionally lift and/or carry less than ten pounds, frequently lift and/or carry less than ten pounds, stand and walk less than two hours in an eight-hour workday and sit about two hours in an eight-hour workday. Dr. Gibson stated the claimant could sit for ten minutes before changing positions and stand for five minutes before changing positions. The doctor found the claimant needed to walk around every ten minutes for a duration of five minutes and needed the opportunity to shift at will from sitting to standing/walking hourly. He opined the claimant could occasionally stoop, crouch, and climb stairs, but never twist or climb ladders. Dr. Gibson found the claimant could frequently reach, handle, finger, feel, and push/pull with the right hand. As for the right[4] hand, he stated the claimant could frequently reach, but only occasionally handle, finger, feel, and push/pull. The doctor opined the claimant should avoid concentrated exposure to extreme heat, high humidity, and pulmonary irritants, and even moderate exposure to extreme cold. He further found the claimant would likely be absent from work more than four days per month due to his impairment or the treatment thereof (Exhibit 9F). *Dr. Gibson's opinion is not consistent with his own treatment notes, which show a conservative course of action. Additionally, it is not supported by the claimant's own admission of activities (Ex. 5E); the consultative examination or the opinions of the State agency medical consultants. Therefore, it is given little to no weight.*

At the request of the Social Security Administration, Woodrow Wilson, M.D., examined the claimant on February 3, 2017. The claimant's gait was normal with good cadence. He could tandem walk six steps without difficulty. The claimant could go up on his toes, back on his heels, and balance weight on each foot independently. Romberg was negative. Shoulders had forward extension to one hundred and forty degrees bilaterally, abduction to one hundred and seventy degrees bilaterally, full internal rotation, and external rotation twenty degrees bilaterally. Elbows had a full range of motion. The wrists had good dorsiflexion, but palmar flexion was forty degrees on the right and thirty degrees on the left. Hands had full range of motion, except the claimant had some

[4] This appears to be a scrivener's error in the ALJ's Decision. Dr. Gibson's notes indicate that Plaintiff has some difficulty with arthritis in his left hand and more function in his right hand. *See* TR 521

17

degenerative changes to his finger joints and some mild mallet finger deformities to his third fingers bilaterally. Hips flexed to ninety degrees bilaterally with full internal and external rotation. Knees and ankles had a full range of motion. The claimant had full flexion of the neck, but extension was twenty degrees. Lateral deviation to the right side was thirty and to the left side was ten degrees with normal rotation in each direction. The thoracolumbar spine exhibited flexion to ninety degrees, extension to ten degrees, and lateral deviation to each direction twenty-five degrees. Straight leg raise was negative bilaterally. Motor strength was 5/5. Sensation to light touch was intact. The claimant did not complain of any numbness anywhere. Cerebellar functioning was good. Deep tendon reflexes were 2+ and equal bilaterally. Dr. Wilson diagnosed chronic low back pain and history of degenerative disc disease; history of borderline diabetes mellitus, not currently being treated; and obesity. The doctor opined the claimant could sit for four to six hours in an eight-hour day; stand and walk two to four hours each; lift up to fifty pounds occasionally; and take care of his own activities of daily living (Exhibit 2F). *Dr. Wilson examined the claimant and his opinion is largely supported by the treatment notes. Therefore, it is given significant weight as far as the upper limits cited in the opinion since the undersigned looks for the most a person can perform and not the least.*

State agency medical consultant Thomas Thrush, M.D., reviewed the record on March 20, 2017, and opined the claimant could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. Dr. Thrush stated the claimant could frequently stoop, kneel, crouch, and climb ramps or stairs, but only occasionally crawl, or limb ladders, ropes, or scaffolds. The doctor further found the claimant should avoid concentrated exposure to extreme cold and hazards, such as machinery and heights (Exhibit 1A). *When viewed in light of the entire record, including the consultative examination, Dr. Thrush's assessment of the claimant's postural and environmental limitations is somewhat pessimistic. However, his opinion of the claimant's exertional limitations is consistent with the treatment notes and the claimant's reported activities. Therefore, Dr. Thrust's opinion is given significant weight to the extent consistent with the record.*

At the reconsideration stage on June 20, 2017, Ok Yung Chung, M.D., examined the record and opined the claimant could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. The

18

doctor further found the claimant could frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but only occasionally climb ladders, ropes, or scaffolds (Exhibit 4A). *Dr. Chung's assessment is consistent with the treatment notes, consultative examination, and the claimant's reported activities. Therefore, it is given great weight.*

TR 171-172 (emphasis added).

Defendant does not dispute that Dr. Gibson treated Plaintiff for fifteen years or more. Docket 26, p. 9. Dr. Gibson treated Plaintiff for an extensive period of time,[5] a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As can be seen, however, Dr. Gibson's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

Because Dr. Gibson's opinion was inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord Dr. Gibson's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

---

[5] At Plaintiff's January 30, 2017, appointment, Dr. Gibson indicated that he had not seen Plaintiff for a follow-up since 2013. TR 439. Plaintiff saw Dr. Gibson again on May 4, 2017 (TR 450) and May 10, 2018 (TR 520). The fact that Plaintiff saw Dr. Gibson for over fifteen years is not disputed.

19

## 5. Reliance on Function Report

Plaintiff contends that the RFC is inaccurate because the ALJ erred in relying heavily on the function report. Docket No. 22-1, p. 7. Plaintiff further contends that the function report filed by the claimant was a subjective estimate of what the claimant believed he could perform and did not necessarily indicate what Plaintiff could do on a repeated basis as required by the regulations. *Id*. Plaintiff implies that his pride prevented him from accurately admitting his own limitations when he filled out the function report. *Id*.

Defendant responds that the ALJ is free to consider forms completed before a claimant's application. Docket No. 26, pp. 12-13. Defendant maintains that the ALJ properly found Plaintiff's daily activities inconsistent with his allegations. *Id*. Defendant notes that Plaintiff cared for his disabled wife and pets, cleaned, mowed his lawn with a riding mower, drove, shopped, gardened, attended church, read the Bible, worked his five-acre farm, and performed odd jobs after his alleged onset date. *Id*. Defendant further argues that Dr. Wilson's opinion reflected that Plaintiff could perform his activities of daily living on his own. *Id*. Defendant maintains that the ALJ properly considered Plaintiff's daily activities as described in the function report and found them inconsistent with the extent of Plaintiff's allegations. *Id*.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability. . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

Docket 26 at 9. However, Plaintiff only saw Dr. Gibson three times from 2013-2019.

20

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986), *quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled ...."); *Moon*, 923 F.2d at 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), *construing* 20 C.F.R. § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that the daily activities that Plaintiff described are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." TR 172. Specifically, the ALJ articulated that Plaintiff described daily activities including

21

"cleaning, driving, fishing, gardening, grocery shopping, and mowing the yard with a riding mower."
TR 172. The ALJ further articulated that Plaintiff reported that he works on his five-acre farm and that he worked odd jobs during the relevant period, most recently "hanging pictures and mirrors in commercial buildings." TR 172-73. As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 172-73. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538. An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987).

After assessing all the objective medical evidence, the ALJ determined that, though the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, "the claimant's statements concerning the intensity, persistence, and limiting

22

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." TR 170. The ALJ further explained that "the fact that the impairment did not prevent the claimant from working tends to suggest that it is not as severe as currently alleged." TR 173.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 6. Residual Functional Capacity and Reliance on Function Report

Plaintiff maintains that the medical record does not support an RFC of medium. Docket No. 22-1, p. 7. Plaintiff argues that the ALJ erred in "failing to consider the entirety of 20 CFR 404.1545." *Id.* Plaintiff further argues that the ALJ erred in relying too heavily on the function report, which was a "subjective estimate of what the claimant believed he could perform, not necessarily on a repeated basis as would be required in SGA level work." *Id.* As previously discussed, Plaintiff implies that his pride prevented him from accurately admitting his own limitations when he filled out the function report. *Id.*

Defendant responds that, in finding Plaintiff capable of a range of medium work as defined in the CFR, the ALJ considered the record as a whole, including Plaintiff's subjective complaints. Docket No. 26, p. 6. Defendant maintains that the ALJ properly determined that the record did not support Plaintiff's allegations, which were inconsistent with the record as a whole, including the medical opinions, his medical treatment and the medical evidence. *Id.* Defendant contends that the ALJ's consideration of the subjective aspects of Plaintiff's complaints comported with the regulations. *Id.* Defendant maintains that substantial evidence supports the ALJ's finding that Plaintiff could perform a restricted range of medium work. *Id.* Defendant maintains that the ALJ articulated appropriate bases for the weight given the evidence of record and found that Plaintiff

23

retained the RFC to perform a range of medium work with frequent postural activities. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for medium work as defined in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFCFR 404.1520(d), 404.1525, and 404.1526). TR 170. The ALJ explained:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527.
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the

24

intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant alleged impairments causing low back pain that radiated to the lower extremities. According to the claimant, these symptoms made it difficult to lift, squat, bend, stand, walk, kneel, and climb stairs (Exhibits 5E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; *however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.*

The objective medical evidence supports the stated residual functional capacity. The claimant has a history of low back pain that radiated to his lower extremities. Upon examination, the lumbar spine exhibited tenderness on palpation and reduced range of motion. There was normal lordosis and no spasms. Straight leg raise tests were consistently negative. The claimant was prescribed Ibuprofen and referred to physical therapy. *However, he was discharged from physical therapy after he failed to attend all appointments subsequent to the initial assessment. Surgery was not discussed, indicating the conservative methods adequately controlled the claimant's symptoms* (Exhibits 1F, 3F, 6F, and 8F).

TR 170-71 (emphasis added).

As discussed above, the ALJ fully considered and appropriately assessed the medical opinion evidence.

The ALJ also considered the claimant's treatment and compliance with treatment, stating:

In addition to an analysis of the medical evidence, the undersigned had other reasons for finding the claimant's allegations of symptoms are not entirely consistent with the record in its entirety. *The claimant's treatment has been essentially routine and/or conservative*

25

*in nature.* He was merely prescribed ibuprofen and referred to physical therapy. Surgery was not discussed, indicating the conservative treatment adequately controlled his symptoms (Exhibit 1F, 3F, 6F, and 8F).

*Additionally, there is evidence that the claimant has not been entirely compliant with treatment.* As discussed above, the claimant only attended one session of physical therapy. He was subsequently discharged for not attending any additional appointments (Exhibit 6F). *This evidence suggests the symptoms may not be as severe as currently alleged.*

TR 172 (emphasis added).

The ALJ also considered the claimant's descriptions of his daily activities, stating:

The claimant has described daily activities including cleaning, driving, fishing, gardening, grocery shopping, and mowing the yard with a riding mower. The claimant also indicated he could lift 40 pounds (Exhibit 5E). The claimant also reported that he primarily works on his 5 acre farm (Ex. 6F, p. 1). *These activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.*

*Further, the claimant worked odd jobs during the relevant period*; in fact during a recent examination on May 10, 2018, it was noted that the claimant's most recent job was hanging pictures and mirrors in commercial buildings (Ex. 8F, p. 2). As evidenced above, the record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity throughout the relevant period (see Testimony and Exhibits 1F, 3F, 6F, and 8F). *Although the record does not support a determination that the claimant earned enough to meet the definition of substantial gainful activity, the fact that the impairment did not prevent the claimant from working tends to suggest that it is not as severe as currently alleged.*

TR 172-73 (emphasis added).

The ALJ also considered her own observations of the claimant stating:

The undersigned also had the opportunity to observe the claimant during the course of the hearing and noted that there was no indication of pain or discomfort at any time.

TR 173.

While Plaintiff is correct that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation, the ALJ should consider a claimant's reported daily activities when rendering an RFC determination. *See, e.g., Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992).

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including Plaintiff's reported level of activity and ultimately determined that Plaintiff retained the RFC to perform medium work. TR 170. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

As previously mentioned, substantial evidence is a minimum burden, quantified as more than a scintilla but less than a preponderance of evidence. *See Bell*, 105 F.3d 244 at 245; *see also Her*, 203 F.3d 388. As has been demonstrated in the statements of error above, the record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." Additionally, the ALJ's decision demonstrates that she carefully considered the testimony of both Plaintiff and the VE. While it is true that some of the evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). TR 170. Because substantial evidence supports the ALJ's determination that Plaintiff could perform a restricted range of medium work, the ALJ's decision must stand.

27

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Brief in Support of Motion for Judgement on the Administrative Record" (Docket No. 22) BE DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

28